**FILED**

DEC - 4 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ a cc _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON A. REDON,<br><br>                Plaintiff,<br><br>   vs.<br><br><br>ANDRES RUIZ, et al.,<br><br>                Defendants. | CASE NO. 13cv1765-WQH(KSC)<br><br>ORDER GRANTING DEFENDANTS' EX PARTE APPLICATION FOR AN ORDER COMPELLING PLAINTIFF TO PROVIDE WRITTEN RESPONSES TO DISCOVERY AND A RELEASE OF MEDICAL RECORDS<br><br>[Doc. No. 34.] |

Before the Court is defendants' Ex Parte Application for an Order Compelling Written Discovery Responses and Release of Medical Records [Doc. No. 34] and plaintiff's Opposition thereto [Doc. No. 36]. Defendants' Ex Parte Application indicates that plaintiff did not serve timely responses to defendants' interrogatories and document requests. As a result, defendants seek an order compelling plaintiff to provide written responses to these discovery requests. In addition, defendants seek an order requiring plaintiff to execute an authorization form, so they can subpoena his medical and mental health records. Defendant's Ex Parte Application and plaintiff's Opposition also raise a number of case management issues, including a request to continue the current deadline for completing fact discovery as a result of plaintiff's failure to provide responses to discovery requests. [Doc. No. 34-1, at p. 5.] These other

1  issues will be addressed in separate orders for the convenience of the Court and/or

2  because they have been raised in more than one Ex Parte Application.

3      For the reasons outlined more fully below, the Court finds that defendants'

4  Ex Parte Application for an order compelling plaintiff to provide responses to

5  interrogatories and document requests must be GRANTED with certain limitations.

6  The Court also finds that defendants' request for an order compelling plaintiff to

7  provide defendants with an executed authorization form for his medical and mental

8  health records must be GRANTED with certain limitations.

9                               ***Background***

10     In this civil rights action, plaintiff is proceeding *pro se*.[1] [Doc. No. 8, at p. 1.]

11  The Amended Complaint ("Complaint") filed on December 23, 2013 includes causes

12  of action against defendants for violations of plaintiff's civil rights under Title 42,

13  United States Code, Section 1983; the Americans with Disabilities Act ("ADA"); and

14  state law.  In an Order filed on July 28, 2014, the District Court dismissed all of

15  plaintiff's state law causes of action as time-barred. [Doc. No. 23, at p. 6.] In addition,

16  the District Court's July 28, 2014 Order dismissed plaintiff's Section 1983 cause of

17  action against defendants for failure to implement appropriate policies, customs, and

18  practices.  Any and all allegations against Jan Goldsmith (City Attorney) and Miriam

19  Milstein were also dismissed by the District Court's Order of July 28, 2014 for failure

20  to state a claim and prosecutorial immunity. [Doc. No. 23, at pp. 7-8.] Based on the

21  foregoing, plaintiff's remaining causes of action against defendants are for alleged

22  constitutional violations under Section 1983 for:  (1) excessive force; (2) false arrest;

23  (3) deprivation of property without Due Process; (4) cruel and unusual punishment; and

24  (5) violations of the ADA.

25  _____

26     [1]   *Pro se* litigants are afforded some leniency to compensate for their lack
    of legal training.  "In civil rights cases where the plaintiff appears *pro se*, the court
27  must construe the pleadings liberally and must afford plaintiff the benefit of any
    doubt." *Jackson v. Carey*, 353 F.3d 750, 757 (9ᵗʰ Cir. 2003) (internal citation omitted).
    This also applies to motions.  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925
28  (9th Cir. 2003).  Accordingly, plaintiff's *pro se* status will be taken into consideration
    by the Court when his filings are reviewed.

Plaintiff's factual allegations relate to two separate incidents on May 3, 2011 and August 19, 2011.  In both of these incidents, plaintiff claims police officers acted improperly and subjected him to unnecessary and excessive force.

***May 3, 2011 Incident***:   The Complaint states that plaintiff dialed 9-1-1 on May 3, 2011 and asked for assistance in finding his wife and four-month old daughter, because his wife ran out of their home with the child but without any food, clothing, or diapers.  An officer arrived but told plaintiff there was nothing he could do to help. [Doc. No. 8, at p. 3.] Later the same day, plaintiff's wife returned with the child and began packing to leave, but plaintiff refused to let her take the child again.  As a result, plaintiff's wife dialed 9-1-1 and said plaintiff had taken the child. [Doc. No. 8, at p. 3.] Before officers arrived, plaintiff gave the child to his wife.  When officers arrived, plaintiff alleges they forced him outside of the home and allowed his wife to gather her belongings.  The officers then escorted plaintiff's wife, child, and dog out of the home. [Doc. No. 8, at p. 4.]

Next, plaintiff vented his frustration over the situation by making statements on Facebook.  These statements caused relatives and friends to be concerned enough to dial 9-1-1 and ask for mental health officials to check on plaintiff.  When the officers arrived, plaintiff allegedly told them he was fine; apologized for wasting their time; thanked them for checking on him; and asked them to leave. [Doc. No. 8, at p. 4.] Instead, plaintiff alleges that officers attacked him; wrestled him to the ground; hog tied him; laid him face down in the hallway; and began applying "pain compliance techniques." [Doc. No. 8, at p. 4.] According to the Complaint, officers bent plaintiff's fingers and limbs and kicked, elbowed, and punched him for five to seven minutes. Officers then dragged plaintiff out to the street and sat him in a squad car. [Doc. No. 8, at p. 4.]

While in the squad car, plaintiff alleges her overheard officers talking about falsifying reports to say plaintiff was armed with a knife when officers arrived. [Doc. No. 8, at p. 4.] Plaintiff was then transported to a San Diego County Mental Health

1    facility, where he claims he was admitted and held against his will for 72 hours. [Doc.

2    No. 8, at p. 4.] After being released from the 72-hour hold, plaintiff returned to live

3    with his wife. [Doc. No. 8, at p. 4.]

4         ***August 19, 2011 Incident***:  On August 19, 2011, plaintiff's wife called 9-1-1

5    reporting that plaintiff had their child, was bi-polar, and smoked marijuana.  She also

6    claimed plaintiff had pushed her and spit on her.  However, during the course of the

7    conversation with the 9-1-1 operator, plaintiff's wife realized she made a mistake, said

8    everything was fine, and told the operator it was not necessary for anyone to come out

9    to investigate.  However, the operator informed plaintiff's wife that officers were

10   required to investigate all reports of domestic violence. [Doc. No. 8, at p. 5.]

11        About 30 minutes after the 9-1-1 call, Officer Ruiz and Officer Jordan arrived

12   but everything was calm by this time, and the couple's child was asleep on plaintiff's

13   shoulder. [Doc. No. 8, at p. 5.] Plaintiff's wife told the officers they could come inside

14   but everything was fine.  Plaintiff recognized Officer Jordan from the prior incident on

15   May 3, 2011.  Plaintiff was asked to step outside, and Officer Jordan directed plaintiff

16   to put the child down on an adult bed.  Believing it would be unsafe to place a child

17   unattended on a bed, plaintiff said, "No."  After Officer Jordan repeated his request,

18   plaintiff's wife offered to take the child. [Doc. No. 8, at p. 5.]

19        When the couple began to exchange the child, the Complaint alleges that officers

20   "without a word of warning" grabbed plaintiff, kneed him, and placed him in a "carotid

21   choke." [Doc. No. 8, at p. 5.] Plaintiff allegedly lost consciousness and was lowered

22   to the ground.  Officer Ruiz then allegedly pulled out his Taser gun and "deployed" it

23   at "point blank range" into the left side of plaintiff's chest and then into his knee. [Doc.

24   No. 8, at p. 6.] Once he regained consciousness, plaintiff was arrested and taken to the

25   hospital. [Doc. No. 8, at p. 6.]

26        As a result of these incidents, plaintiff claims he "suffered serious personal

27   injuries and loss of companionship of his wife and child for a period of 4 months."

28   [Doc. No. 8, at p. 12.] He also claims that he suffers from fear, anxiety, and "severe

emotional distress." [Doc. No. 8, at p. 9, 13-15.]  In the prayer for relief, plaintiff seeks general, compensatory, and punitive damages. [Doc. No. 8, at p. 19-20.] Plaintiff also seeks injunctive relief in the form of an order requiring the San Diego Police Department to refrain from using Taser guns and to rewrite their use of force matrix to comply with the Constitution.  In addition, plaintiff seeks an order requiring defendants to seal and destroy all documents and records referring to him or his arrest between May 3, 2012 and January 20, 2013. [Doc. No. 8, at pp. 20.]

### *Discussion*

### I.   *Plaintiff's Failure to Provide Timely Responses.*

On March 5, 2015, the Court issued a Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings.  The Scheduling Order set July 31, 2015 as the deadline for completing fact discovery. [Doc. No. 31, at p. 2.] On April 13, 2015, defendants served plaintiff with written discovery requests.   At the same time, defendants also requested that plaintiff sign a release for his medical records. [Doc. No. 34-1, at p. 3.] Plaintiff's responses to defendants' discovery requests were due on May 18, 2015. [Doc. No. 34-1, at p. 3; Doc. No. 34-2, at p. 2.]  Copies of these written discovery requests to plaintiff were submitted in support of defendants' Ex Parte Application as Exhibit A to defense counsel's Declaration. These written discovery requests include: (1) Special Interrogatories (Set One), Nos. 1-23; and (2) Request for Production of Documents (Set One), Nos. 1-22. [Doc. No. 34-2, at p. 2; Doc. No. 34-4, at pp. 1-20.] As of June 15, 2015, the date defense counsel filed the instant Ex Parte Application, plaintiff had not provided defendants with any responses to the written discovery requests.[2] [Doc. No. 34-1, at p. 3.]

///

---

[2]     In a later Declaration filed in support of an Ex Parte Application to Amend the Scheduling Order filed on October 6, 2015, defense counsel did report that plaintiff provided responses to written discovery on July 21, 2015, long after they were due, but stated his responses are "woefully deficient." [Doc. No. 47-2, at p. 2.] As a result, the Court finds that these later responses do not moot defendants' request for an order compelling plaintiff to respond.

1    According to defendants, plaintiff has provided a variety of reasons for not

2  responding to their written discovery.  Defense counsel unsuccessfully attempted to

3  resolve this discovery dispute with plaintiff through the meet and confer process

4  required by Federal Rule 37(a)(1), Local Rules, and Chambers' Rules. [Doc. No. 34-3,

5  at pp. 1-5.]  Plaintiff then declined to participate in the joint motion process required

6  by Chambers' Rules to  raise discovery disputes before the Court, and, as a result,

7  defense counsel filed the instant Ex Parte Application. [Doc. No. 34-1, at p. 4.]

8    In his Opposition to defendant's Ex Parte Application, plaintiff presents a

9  number of reasons why he did not provide timely responses to defendants' written

10  discovery requests.[3] [Doc. No. 36.]  Many of his arguments relate to defendants'

11  requests seeking access to his medical and mental health records.  However, plaintiff's

12  reasons for not responding are essentially objections, so they do not justify a complete

13  failure to respond.

14    When a party is served with interrogatories under Federal Rule 33 or with

15  document requests under Federal Rule 34, the party must provide written responses and

16  any objections "within 30 days after being served."   Fed.R.Civ.P. 33(b)(2)-(4);

17  34(b)(2)(A)-(D).  "A party seeking discovery may move for an order compelling an

18  answer . . . if:  . . .  (iii) a party fails to answer an interrogatory submitted under Rule

19  33; or (iv) a party fails to respond that inspection will be permitted–or fails to permit

20  inspection–as required under Rule 34."  Fed.R.Civ.P. 37(a)(3)(B).

21    As noted above, defendant submitted evidence indicating plaintiff did not

22  provide defendant with any written responses or objections as required under the

---

[3]    One of plaintiff's reasons for not responding to defendants' written discovery requests is that defendants have "yet to provide plaintiff with any discovery requested." [Doc. No. 36, at p. 12.]  However, defendants' Ex Parte Application was filed  to raise disputes related to defendants' discovery requests, not plaintiff's. Plaintiff "should not seek this Court's approval of a 'tit for tat' approach to litigation." *Acushnet Co. v. Birdie Golf Ball Co., Inc.*, 166 F.R.D. 42, 43 (S.D. Fla. 1996). The Federal Rules do not contain a provision "authorizing a litigant to behave only as well as his opponent." *Id.*  Plaintiff's remedy for responses he considers inadequate is, of course, to meet and confer and timely file a Joint Motion or Ex Parte Application if the dispute cannot be resolved without the Court's assistance.

13cv1765-WQH(KSC)

1  Federal Rules. Instead, plaintiff essentially advised defendants by telephone and e-mail

2  that he would not provide any responses to written discovery. [Doc. No. 34-2, at pp.

3  2-3.] Therefore, the Court finds that defendants' request for an order compelling

4  plaintiff to respond to their April 13, 2015 discovery requests must be GRANTED.

5  As noted above, *pro se* litigants are afforded some leniency to compensate for

6  their lack of legal training. However, this leniency "does not constitute a license for

7  a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure." *Moore v.*

8  *Agency for Intern. Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993), quoting *Jarrell v. Tisch*,

9  656 F.Supp. 237, 239 (D.D.C. 1987). "[P]ro se litigants are bound by the rules of

10 procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). Failure to follow

11 procedural rules "is a proper ground for dismissal." *Id.* at 53. "The severe sanction of

12 dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro*

13 *se*, so long as a warning has been given that noncompliance can result in dismissal.

14 *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994).

15 **Here, plaintiff is forewarned that he must provide timely responses in writing**

16 **to defendants' discovery requests, even if he has objections.** Any objections must be

17 included in plaintiff's responses on a request-by-request basis. Because plaintiff failed

18 to provide timely responses to defendants' written discovery requests served on or

19 about April 13, 2015, defendants are entitled to an order compelling him to respond.

20 **If plaintiff does not respond as ordered, this Court will impose sanctions pursuant**

21 **to Federal Rule of Civil Procedure 37(b)(2)(A) and/or Rule 37(b)(2)(C), up to and**

22 **including a recommendation to the District Court that the action be dismissed.**

23 **II.    Plaintiff's Objections to Defendants' Written Discovery Requests.**

24 Although defendants represented in a later Ex Parte Application that plaintiff did

25 provide responses to discovery on July 21, 2015, long after they were due, defendants

26 also stated that the responses plaintiff finally did provide "are woefully deficient."

27 [Doc. No. 47-2, at p. 2; Doc. No. 31, at p. 2.] For example, defendants claim that

28 plaintiff refused to provide a list of his medical and mental health providers even

1   though he claims multiple physical injuries and severe emotional distress, including

2   Post Traumatic Stress Disorder. [Doc. No. 47-2, at pp. 2-3.] Defendants also represent

3   that plaintiff claims loss of wages but did not provide any wage information. [Doc. No.

4   47-2, at p. 2.] In addition, defendants state that plaintiff "has not produced a single

5   document" in response to any of their discovery requests. [Doc. No. 47-2, at p. 3.]

6       Although the parties have not formally presented issues related to the adequacy

7   of plaintiff's July 21, 2015 responses to defendants' April 13, 2015 written discovery

8   requests, the Court has reviewed copies of these discovery requests, because they were

9   submitted as Exhibit A to the instant Ex Parte Application. [Doc. No. 34-4, at pp. 1-

10  17.] With the hope of avoiding another motion about the adequacy of plaintiff's

11  responses, the Court will address plaintiff's main objections to these discovery requests

12  as expressed in his Opposition to defendants' Ex Parte Application. [Doc. No. 36.]

13      In general, plaintiff believes defendants' written discovery requests are "overly

14  invasive" and "oppressive" and seek documents and information that are irrelevant,

15  private, overly burdensome, and expensive. [Doc. No. 36-1, at p. 6.] Plaintiff's specific

16  objections to defendants' written discovery requests relate mostly to the disclosure of

17  information and/or documents concerning his medical and mental health.   First,

18  plaintiff does not believe his medical condition and mental health are relevant.

19  Plaintiff believes he has not put his medical condition or mental health in controversy

20  in this action, because he does not plan to offer medical expert testimony and he is only

21  seeking "garden variety" damages. [Doc. No. 36, at p. 3, 44, 45-46. 52.] According to

22  plaintiff, it is defendants who have put plaintiffs' medical condition and mental health

23  at issue, but this does not mean he should be compelled to produce his private

24  information and records. [Doc. No. 36, at p. 3.]

25      Second, plaintiff believes his medical records and information are protected from

26  disclosure by the doctor-patient privilege. [Doc. No. 36, at p. 43.] Third, plaintiff

27  claims that his mental health records and information are protected by the

28  psychotherapist-patient privilege, and he has not waived the privilege because he seeks

1    only "garden variety" damages for emotional suffering and does not intend to rely on
2    expert testimony at trial. [Doc. No. 36, at p. 44-45; Doc. No. 36-1, at pp. 2-6.] He also
3    does not believe he has waived the psychotherapist-patient privilege because he has not
4    put his mental health at issue.  Rather, plaintiff believes it is defendants who are
5    attempting to put his medical condition and mental health at issue so they can further
6    their "character assassinations" of plaintiff and justify their actions.  [Doc. No. 36, at
7    pp. 46-47, 49-53.]

8       Fourth, plaintiff believes he has an interest in protecting the privacy of his
9    medical and mental health records, and "there are less intrusive means" than
10   defendants' request for a "blanket medical release." [Doc. No. 36, at p. 45.] Plaintiff
11   contends that defendants should have to request specific information from specific
12   doctors during a specific time frame and should not be allowed to rifle through
13   plaintiff's medical and mental health records "carte blanche" looking for "damning
14   information." [Doc. No. 36, at p. 6, 45.] Plaintiff also seeks to protect the privacy of
15   third parties who may be mentioned in his medical and mental health records, such as
16   his wife, family, and friends. [Doc. No. 36, at p. 43, 45.]

17       **A.     *Relevance Standard.***

18       "Parties may obtain discovery regarding any nonprivileged matter that is relevant
19   to any party's claim or defense . . . . For good cause, the court may order discovery of
20   any matter relevant to the subject matter involved in the action.  Relevant information
21   need not be admissible at the trial if the discovery appears reasonably calculated to lead
22   to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b).  Discovery may be
23   limited if the Court determines it is unreasonably cumulative, duplicative, overly
24   burdensome, or too expensive "considering the needs of the case, the amount in
25   controversy, the parties' resources, the importance of the issues at stake in the action,
26   and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C).
27   / / /
28   / / /

### B. *Physician-Patient Privilege and Privacy of Medical Records.*

"Assertions of privileges in federal question cases are governed by federal common law (Rule 501, Federal Rules of Evidence). The physician-patient privilege is not recognized by federal common law, federal statute, or the U.S. Constitution. . . . Therefore, [plaintiff] may not rely on the physician-patient privilege or medical records privilege to withhold records. Nor may he rely on a right of privacy, since this right is only available explicitly under the California Constitution and may be abrogated where justified under federal law." *Hutton v. City of Martinez*, 219 F.R.D. 164, 166 (2003). "[A] plaintiff must disclose medical records relating to any condition he himself puts at issue." *Doe v. Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 837 F.Supp.2d 1145, 1157 (D. Idaho 2011), citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1402 (9th Cir. 1994). "Medical records unrelated to the conditions put in issue by a plaintiff are not relevant and are thus not discoverable, regardless of whether a specific privilege is applicable." *Doe v. Presiding Bishop*, 837 F.Supp.2d at 1167.

Based on the allegations in the operative Complaint, the Court must reject plaintiff's contention that his medical records are not relevant and/or that he has not put his medical condition at issue in this lawsuit. The operative Complaint includes allegations demonstrating that plaintiff has put his medical condition at issue. The introduction of the Complaint states that plaintiff "was injured from improper use of force. . . ." [Doc. No. 8, at p. 1.] The Complaint also states that plaintiff suffered both physical and "serious personal injuries" as a result of defendants' actions against him. [Doc. No. 8, at p. 1-2, 12, 13.]

Under these circumstances, plaintiff is obligated to provide defendant with full and complete responses to written discovery requests to the extent they seek: (1) identification of any physical, mental, or emotional injuries plaintiff claims to have suffered as a result of the incidents alleged in the Complaint; (2) documents or information identifying all of plaintiff's health care providers for a reasonable time

1   prior to the incidents alleged in the Complaint through and including the present date;

2   (3) documents or information identifying any health care providers who treated

3   plaintiff for any physical or personal injuries he claims he incurred as a result of the

4   incidents alleged in the Complaint; (4) documents or information showing plaintiff's

5   disability status at the time of the incidents described in the Complaint; (5) medical

6   records and reports for a reasonable time prior to the incidents described in the

7   Complaint that relate or refer to any injuries plaintiff suffered that were to the same or

8   similar parts of plaintiff's body that he claims to have injured in the incidents alleged

9   in the Complaint.  For example, if plaintiff injured his knee in 2010 and received

10  treatment for that injury in 2010 and claims to have injured the same leg, knee, or foot

11  during the incidents alleged in the Complaint, plaintiff must disclose any and all

12  medical treatment records that relate to the 2010 knee injury.  To protect plaintiff's

13  privacy, any and all medical information or records produced by plaintiff will be

14  subject to the Protective Order filed in this case on May 26, 2015 [Doc. No. 33].

15      *C.    Psychotherapist/Patient Privilege and Waiver.*

16      In *Jaffee v. Redmond*, 518 U.S. 1 (1996), the United States Supreme Court held

17  that confidential communications between a licensed psychotherapist, psychologist, or

18  social worker and his or her patients "in the course of diagnosis or treatment are

19  protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."

20  *Id.* at 15.  According to the Supreme Court, this privilege serves important public and

21  private interests by "facilitating the provision of appropriate treatment for individuals

22  suffering the effects of a mental or emotional problem" and by promoting "frank and

23  complete" disclosure of sensitive information needed for successful treatment.  *Id.* at

24  10-12.

25      As with "other testimonial privileges," the Supreme Court in *Jaffee v. Redmond*

26  acknowledged that the patient may waive the privilege.  *Id.* at 15 n.14.  However, the

27  Supreme Court did not state what facts and circumstances would be necessary to

28  constitute a waiver.  The Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1, did reject

1    the "balancing" approach previously taken by other courts. *Id.* at 17.  In this regard,

2    the Supreme Court stated as follows:   "Making the promise of confidentiality

3    contingent upon a trial judge's later evaluation of the relative importance of the

4    patient's interest in privacy and the evidentiary need for disclosure would eviscerate

5    the effectiveness of the privilege. . . .  An uncertain privilege, or one which purports

6    to be certain but results in widely varying applications by the courts, is little better than

7    no privilege at all." *Id.* at 17-18.

8          Federal Courts have approached the issue of waiver in several different ways.

9    In some cases, such as *Vanderbuilt v. Town of Chilmark*, 174 F.R.D. 225 (D. Mass.

10   1997), a narrow approach to waiver has been applied, so that no waiver has occurred

11   unless the patient "relies on the advice or findings of her psychotherapist." *Id.* at 229.

12   For example, a patient cannot rely on the privilege if he or she calls his or her

13   psychotherapist as a witness, testifies about the substance of a communication with his

14   or her psychotherapist, or sues his or her psychotherapist for professional malpractice.

15   *Id.*    The plaintiff in *Vanderbuilt* complained about unlawful discrimination and

16   retaliation by her employer and sought damages for "emotional distress." *Id.* at 225.

17   The defendant employer sought to compel production of her mental health records and

18   deposition testimony by her treating mental health professionals. However, the District

19   Court concluded that the plaintiff had not waived the privilege, because she did not

20   intend to call her psychotherapist as a witness or testify about the substance of their

21   communications herself. *Id.*  at 226.  *See also Fitzgerald v. Cassil*, 216 F.R.D. 632

22   (N.D. Cal. 2003) (applying the narrow approach to waiver of the psychotherapist-

23   patient privilege where a couple alleged harassment by their landlord which caused

24   them emotional distress but stipulated they did not intend to rely on a treating

25   psychotherapist or other expert to prove emotional distress damages).

26         Other cases, such as *Sarko v. Penn-Del-Directory Co.*, 170 F.R.D. 127 (E.D. Pa.

27   1997), have taken a broader approach by holding that the privilege is waived if the

28   plaintiff places her mental condition directly at issue in the action. *Id.* at 130.  The

plaintiff in *Sarko* alleged unlawful discrimination under the Americans with Disabilities Act (ADA). "[A]s the first element of her prima facie case" she was required to establish she belonged to a "protected category" of "qualified individuals with a disability" under the ADA, and she claimed she was disabled by "clinical depression." *Id.* As a result, the Court concluded she "placed her mental condition directly at issue in the case," so the privilege was waived as to all confidential communications she had with her mental health provider during the time she was employed by the defendant.[4] *Id.* at 130-131.

Similarly, the District Court in *Equal Employment Opportunity Commission (EEOC) v. California Psychiatric Transitions*, 258 F.R.D. 391 (2009), applied the "broad approach" to waiver based on the particular facts of a case involving alleged employment discrimination and sexual harassment of female employees. *Id.* at 392-393, 400. One of the plaintiffs, who was seeking to recover damages for emotional distress, testified in a deposition that she resigned her position "in part over sexual harassment;" immediately consulted with a mental health practitioner; and was permanently disabled by depression. *Id.* at 398. In reaching its determination that the psychotherapist/patient privilege had been waived, the District Court stated as follows: "Although no specific emotional injury was alleged, or no claim of intentional infliction of emotional distress was made, the only remedy the EEOC is seeking on behalf of [the plaintiff] is emotional distress damages resulting from the alleged sexual harassment. Thus, the emotional distress damages is the crux of plaintiff's claim. The fact that [the plaintiff] is being treated for depression suggests that multiple causation for her emotional distress may exist. The emotional distress she allegedly suffered as a result of the sexual harassment could have been effected by her depression and vise

/ / /

---

[4]    "For each item of damages, whether economic or non-economic, the plaintiff must show that the damage was proximately caused by the defendant's unlawful conduct. In turn, the [defendant] is entitled to show that other factors contributed to the plaintiff's damage." *Doe v. City of Chula Vista*, 196 F.R.D. 562, 568 (S.D. Cal. 1999).

1  versa. Defendant should be able to determine whether plaintiff's emotional state may
2  have been effected by something other than defendant's alleged actions." *Id.* at 400.

3      Other cases have distinguished between "garden variety" and more severe
4  categories of emotional distress to determine whether the psychotherapist/patient
5  privilege has been waived. *Flowers v. Owens*, 274 F.R.D. 218, 225-226 (N.D. Ill.
6  2011) and cases cited therein. "Under this approach, courts have generally found a
7  waiver when the plaintiff has done more than allege 'garden variety' emotional
8  distress." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Cal. 2003). "Garden
9  variety" emotional distress has been described in a number of ways, such as "'the
10  distress that any healthy, well-adjusted person would likely feel as a result of being so
11  victimized;'" "'the generalized insult, hurt feelings and lingering resentment which
12  anyone could be expected to feel' given the defendant's conduct;" and general pain and
13  suffering that is not serious enough to require psychological treatment or to disrupt or
14  affect the claimant's life activities. *Flowers v. Owens*, 274 F.R.D. at 225-226 (internal
15  citations omitted). "[S]ince garden variety emotional suffering involves those feelings
16  that would likely be experienced by anyone who experienced what the plaintiff alleges
17  occurred, prohibiting a party's access to []privileged information, does not compromise
18  the ability of the opponent to contest the evidence of emotional damage and thus does
19  not offend notions of fairness." *Id.* at 226.

20      As in this case, the plaintiff in *Flowers v. Owens*, 274 F.R.D. at 218, claimed
21  civil rights violations and sought compensatory and punitive damages. His complaint
22  alleged physical and "emotional injuries" as a result of being beaten while in custody.
23  *Id.* at 220. Defendants sought discovery of plaintiff's mental health records and a
24  deposition of his psychologist/social worker. *Id.* at 221. Plaintiff opposed, arguing this
25  discovery was protected by the psychotherapist/patient privilege, because he was only
26  claiming "garden variety" damages for emotional distress. To prevent a waiver of the
27  privilege, he had agreed not to introduce any expert testimony at trial about his
28  emotional suffering and to limit evidence of emotional distress to the negative

emotions he experienced as a result of the defendant's alleged misconduct, such as humiliation and embarrassment.  He also agreed to exclude evidence of physical symptoms he might have experienced, such as sleeplessness, nervousness, or depression. *Id.* at 220. However, the plaintiff's deposition testimony was inconsistent with his claim of "garden variety" emotional distress.  His deposition testimony indicated he suffered from severe anxiety on a daily basis, could not leave his home without a high level of fear, and continued to get depressed about the incident three years after it happened. *Id.* at 220-222.  As a result, the District Court concluded the plaintiff's symptoms, as expressed in his deposition testimony, exceeded a "garden variety" claim of emotional damages, so the plaintiff could not expect to present this evidence at trial without waiving the psychotherapist/patient privilege. *Id.* at 226-229.

In cases applying this "broad approach," a waiver of the psychotherapist/patient privilege is "based upon the obvious principle of fairness that a party 'cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Flowers v. Owens*, 274 F.R.D. at 225, quoting *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999). "[I]t is only fair to allow defendant access to the information. To protect the records would allow plaintiff to proceed with a claim on unequal terms. If [the plaintiff wants a jury to compensate him for emotional distress], defendant should be able to explore in discovery, other circumstances that may have caused the injury. . . ." *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. at 400.

The Court also notes that no privilege protects "[f]acts regarding the very occurrence of psychotherapy, such as dates of treatment." *Vanderbuilt*, 174 F.R.D. at 230.  Therefore, "if plaintiff was seeing a psychotherapist before any actionable emotional injury allegedly occurred, the dates of such pre-existing treatment would be available to defendants." *Id. See also In re Zuniga*, 714 F.2d 632, 640 (6th Cir. 1983) (finding that "as a general rule, the identity of a patient or the fact and time of his treatment does not fall within the scope of the psychotherapist-patient privilege");

1   *Richardson v. Sexual Assault/Spouse Abuse Center, Inc.*, 764 F.Supp. 2d 736, 743

2   (N.D. Md. 2011) (finding that "disclosure of an individual's receipt of services is not

3   tantamount to a disclosure of confidential information and does not waive the

4   privilege"); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 471 (N.D. Tex. 2005)

5   (concluding that "[t]he names of mental health care providers . . . and dates of treatment

6   are not subject to the privilege"); *Santelli v. Electro-Motive*, 188 F.R.D. at 310

7   (concluding defendant was entitled to discover the identity of plaintiff's

8   psychotherapists and the dates of treatment as this information was not privileged).

9        Based on the allegations in the Complaint, the Court must reject plaintiff's

10   contentions that his mental health information and records are not relevant and/or that

11   he has not put his mental health at issue in this lawsuit. The Complaint includes a

12   number of allegations demonstrating that plaintiff's mental health is a key issue in the

13   case. First, the Complaint alleges that plaintiff suffers from "fear and anxiety" and

14   "severe emotional distress" as a result of the incidents described in the Complaint.

15   [Doc. No. 8, at p. 9.] More specifically, the Complaint states that these incidents have

16   "created an environment of fear and anxiety for the couple making the most basic of

17   daily activities such as travel to and from work wrought with fear, danger and

18   uncertainty, creating severe emotional distress." [Doc. No. 8, at p. 9.] The first cause

19   of action alleges that plaintiff's "mental health arrest" was unconstitutional. [Doc. No.

20   8, at pp. 9-10.]

21        The third cause of action in the Complaint alleges that officers used excessive

22   force against plaintiff which resulted in "both physical and mental injuries," as well as

23   "serious personal injuries and loss of companionship of his wife and child for a period

24   of 4 months. . . ." [Doc. No. 8, at p. 12.] Plaintiff's fourth cause of action for false arrest

25   alleges plaintiff "suffered serious personal injuries and special damages." [Doc. No. 8,

26   at p. 13.] Plaintiff's seventh cause of action for violations of the ADA alleges that

27   officers acted in a discriminatory manner "based on actual and perceived mental health

28   issues. . . ." [Doc. No. 8, at p. 14.] The Court notes that a discrimination claim against

1  a governmental entity under the ADA generally requires proof that the plaintiff is a

2  "qualified individual with a disability." *Duvall v. County of Kitsap*, 260 F3d 1124,

3  1135 (9th Cir. 2001).

4      By including these allegations in his Complaint, plaintiff raises more than a

5  "garden variety" claim of emotional distress. Under these circumstances, he has

6  waived the psychotherapist/patient privilege as to his mental condition for a reasonable

7  time prior to the incidents alleged in the Complaint to the present. As in the cases cited

8  above, defendants are entitled to discover documents and information about plaintiff's

9  mental health to ensure a fair resolution of the case. Accordingly, the Court finds that

10  plaintiff must provide full and complete responses to defendants' written discovery

11  requests to the extent they seek: (1) the identity of mental health professionals that have

12  examined or provided treatment to plaintiff for a reasonable time prior to the incidents

13  described in the Complaint up to the present; (2) identification of any medications

14  taken by plaintiff to address mental health issues, prescribed or not, for a reasonable

15  time prior to the incidents described in the Complaint to the present; (3) all mental

16  health records and reports for a reasonable time prior to the incidents described in the

17  Complaint to the present, including but not limited to any records maintained by the

18  County of San Diego Health and Human Services Agency concerning the incident on

19  May 4, 2011, when officers transported plaintiff to a mental health facility.

20      **D.**    ***Defendants' Written Discovery Requests Served April 13, 2015.***

21      On the other hand, the Court agrees with plaintiff to the extent he contends that

22  certain of defendants' written discovery requests are overly broad as to time and seek

23  access to medical and mental health records and other information that are not relevant

24  under the circumstances of the case. For this reason, the defendants' written discovery

25  requests are modified to read as follows:

26      <u>Special Interrogatory No. 3</u>: Identify all doctors, medical practitioners, mental

27  health professionals, hospitals, clinics, or any other health care provider, as defined in

28  California Code of Civil Procedure 677.7(e)(3), that examined or rendered treatment

1  to you in the two (2) years prior to the incidents alleged in the operative Complaint or

2  who treated you for any mental or physical injuries you contend you suffered as a result

3  of the incidents alleged in the operative Complaint.

4      Special Interrogatory No. 6: Have you taken any medication, prescribed or not,

5  as a result of mental health disorder(s) in the two (2) years prior to the incidents

6  described in the operative Complaint? If so, for each medication state: (a) the name

7  of the medication; (b) the person who prescribed or furnished the medication; (c) the

8  date the medication was prescribed or furnished; (d) the dates you began and stopped

9  taking the medication; and (e) the cost incurred to date for any such medications.

10     Special Interrogatory No. 9: State the name, address and telephone number of

11  all health care providers from who you have received physical or psychiatric care for

12  the two years prior to the incident through and including the present date.

13     Special Interrogatory No. 12: Identify any and all activities that you were

14  participating in for the two years prior to the incidents described in the operative

15  Complaint for which you contend you are no longer able to participate in as a result of

16  these incidents.

17     Special Interrogatory No. 13: Except for this action, list the court(s), names of

18  the parties, and case number(s) of any action(s) you filed or made a written claim for

19  or demand for compensation for bodily injuries and/or a violation of your civil rights

20  during the two years prior to the incidents alleged in the Complaint up to the present.

21     Request for Production No. 7: All documents that evidence, reflect, refer, or

22  relate to your disability status prior to or at the time of the incident.

23     Request for Production No. 13: All documents, including all medical records and

24  reports, from 2009 to the present, that reflect, refer, or relate to any injuries you

25  suffered prior to the incidents alleged in the Complaint that were to the same or similar

26  parts of your body that you claimed to have injured in the incidents alleged in the

27  Complaint.

28  / / /

1       <u>Request for Production No. 17</u>: All documents evidencing any health insurance
2   or state or federally funded programs providing health care benefits to you that were
3   in effect at the time of the incidents described in the Complaint or after the dates of the
4   incidents described in the Complaint, including any documents evidencing a summary
5   of coverage, an explanation of benefits, the extent of coverage, or claims made as a
6   result of the incidents described in the Complaint.  Plaintiff need not provide a copy
7   of any insurance card.

8       <u>Request for Production No. 22</u>: All documents that relate to your treatment with
9   the County of San Diego Health and Human Services Agency, including your mental
10  health records from 2009 through the present.

11      As to all of defendants' other written discovery requests served April 13, 2015
12  [Doc. No. 34-4, at pp. 1-20 (Exhibit A)], the Court finds that defendants are seeking
13  documents and information that meet the relevance standard of Federal Rule 26(b).
14  These discovery requests are not objectionable for any reason.  As a result, plaintiff
15  must provide defendants with full and complete responses to these discovery requests
16  without limitation or modification by the Court.  As noted above, if plaintiff fails to
17  respond as ordered by the Court, he risks the imposition of sanctions pursuant to
18  Federal Rule of Civil Procedure 37(b)(2)(A) and/or Rule 37(b)(2)(C), up to and
19  including a recommendation to the District Court that the action be dismissed.

20      ***E.***    ***Costs and Procedures for the Production of Documents to Defendants.***
21      In his Opposition to defendants' Ex Parte Application, plaintiff expresses
22  concern about the cost of obtaining copies of his medical and mental health records to
23  produce to defendants. [Doc. No. 36, at p. 14.] According to plaintiff, defendants
24  retained an imaging company that charges $55 per location plus 61 cents per page so
25  copying costs could exceed $1,000.  Plaintiff states that he is unable to afford this high
26  cost and believes defendants are attempting to "scare" him into "dropping his case due
27  to excessive cost." [Doc. No. 36, at p. 14.] However, Rule 34 only requires plaintiff to
28  make relevant documents available to defendants for inspection and copying.  Plaintiff

1   need not pay defendants' copying costs.  Federal Rule of Civil Procedure 34(a)
2   provides that: "A party may serve on any other party a request . . . to produce and
3   *permit* the requesting party or its representative *to inspect, [or] copy* . . . items *in the*
4   *responding party's possession, custody, or control*. . . ."  Fed.R.Civ.P. 34(a)(1)
5   (emphasis added).  Even if plaintiff does not have actual custody or possession of his
6   medical and mental health records, he does have control over them, because he has the
7   right to access them himself. ***To make the documents available to defendants for***
8   ***inspection and copying, plaintiff must complete, sign, date, and return the***
9   ***Authorization form provided by defendants***.  Of course, if plaintiff wants his own
10  copies of these documents, he must pay for them unless his health care providers are
11  willing to provide him with copies at no cost or at a lower cost.

12        For some unexplained reason, plaintiff also seems to believe discovery
13  documents must be sealed and lodged with the Court "under the joint protective order."
14  [Doc. No. 36, at p. 14.]  However, there is no discernable reason for the Court to
15  become involved in the production of any documents by plaintiff.  The Protective
16  Order only provides for documents to be filed with the Court under seal if it becomes
17  necessary for either party to present a confidential document to the Court for
18  consideration in connection with a motion or trial. [Doc. No. 33, at pp. 1-11.] The
19  purpose of the Protective Order is to facilitate the exchange of confidential documents
20  and information between the parties during the discovery process and to protect the
21  parties' privacy by limiting the use of confidential documents and information as set
22  forth in the Protective Order. [Doc. No. 33, at pp.  1-11.]

23                                    *Conclusion*

24        With the limitations outlined above, IT IS HEREBY ORDERED that
25  defendants's Ex Parte Application is GRANTED. [Doc. No. 34.]  As limited above,
26  defendants are entitled to an Order compelling plaintiff to provide full and complete
27  responses to their written discovery requests.  Accordingly, IT IS ORDERED THAT:
28  / / /

1.     *No later than December 18, 2015*, plaintiff shall serve defendants with full and complete responses to the following discovery requests served by defendants on April 13, 2015: (1) Special Interrogatories (Set One), Nos. 1-23; and (2) Request for Production of Documents (Set One), Nos. 1-22. [Doc. No. 34-2, at p. 2; Doc. No. 34-4, at pp. 1-20 (Exhibit A).] Plaintiff's responses shall be limited as explained herein but otherwise shall be WITHOUT OBJECTION.

2.     *No later than December 18, 2015*, plaintiff shall provide defendants with an Authorization form that has been completed, signed, and dated to permit defendants to inspect and copy his medical and mental health records as outlined above.

3.     Defendants shall ensure that they only copy the medical and mental health records permitted by this Order.

4.     To protect plaintiff's privacy, any responses or documents produced pursuant to this Order that include plaintiff's medical, mental health, or financial information shall be subject to the Protective Order filed on May 26, 2015. [Doc. No. 33.]

*Once again, plaintiff is forewarned that sanctions may be imposed against him, including dismissal of the entire action, if he fails to provide full and complete responses and a completed Authorization form as ordered by the Court.* Fed.R.Civ.P. 37(b)(2)(A).

IT IS SO ORDERED.

Date: _____Dec. 4_____, 2015

KAREN S. CRAWFORD
United States Magistrate Judge

- 21 -