# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON A. REDON,<br><br>                    Plaintiff,<br>vs.<br><br>BRANDON JORDAN, DEREK MILLER, ANDRES RUIZ<br><br>                    Defendants. | CASE NO. 13cv1765 WQH (KSC)<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion for Judgment on the Pleadings filed by Defendants Brandon Jordan, Derek Miller, and Andres Ruiz. (ECF No. 41).

## I. Background

On August 22, 2012, Plaintiff Jason A. Redon ("Plaintiff") commenced this action by filing a complaint in the San Diego Superior Court alleging state and federal constitutional violations. (ECF No. 1-2 at 1). On August 27, 2012, Plaintiff filed an amended complaint to recover money damages and injunctive relief in the San Diego Superior Court. (ECF No. 1-2 at 2). On January 8, 2013, Plaintiff served the first amended complaint and summons on Defendant San Diego Police Department. (ECF No. 1-2 at 12). On July 5, 2013, Plaintiff served the second amended complaint[1] for violation of civil rights and other wrongs on Defendant City Attorney of San Diego. (ECF No. 1-3).

---

[1] The second amended complaint appears to have been filed in state court on June 27, 2013.

On July 29, 2013, Defendants filed a notice of removal of civil action in this Court. (ECF No. 1). On August 8, 2013, Defendant Jan Goldsmith filed a motion to dismiss and motion for more definite statement. (ECF No. 2). On August 14, 2013, Plaintiff filed a motion opposing notice of removal of civil action. (ECF No. 4). On August 28, 2013, Plaintiff filed a response opposing the motion to dismiss. (ECF No. 6). On November 8, 2013, this Court denied Plaintiff's motion opposing notice of removal of civil action, granted Defendant's motion to dismiss, and granted Plaintiff leave to amend. (ECF No. 7).

On December 23, 2013, Plaintiff filed an amended complaint ("third amended complaint") which is the operative pleading.[2] (ECF No. 8). In the first six causes of actions of the third amended complaint, Plaintiff alleges the following civil rights violations pursuant to 42 U.S.C. § 1983: (1) violations of First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution (styled as "general allegations"); (2) failure to implement appropriate policies, customs, and practices; (3) use of excessive force; (4) false arrest; (5) deprivation of property without due process of law; and (6) administration of cruel and unusual punishment. Plaintiff alleges in claim (7) violations of the Americans with Disabilities Act of 1990 pursuant to 42 U.S.C. § 12181. The remaining allegations are state law claims including: (8) false imprisonment; (9) negligence; (10) negligent supervision; (11) conspiracy; (12) conversion; (13) assault; (14) abuse of process; (15) slander; (16) violation of California Civil Code § 51.7; and (17) violation California Civil Code § 52.1. *Id*. at 9-19.

On January 13, 2014, Defendants City of San Diego, City Attorney Jan Goldsmith, Andres Ruiz, Brandon Jordan, Derek Miller, and Miriam Milstein filed a motion to dismiss for failure to state a claim. (ECF No. 11). On February 11, 2014,

---

[2] Defendants refer to Plaintiff's third amended complaint as the "second amended complaint." As noted above, Plaintiff appears to have filed a second amended complaint in state court on June 27, 2013. Accordingly, the Court will refer to the operative complaint in this case as the "third amended complaint."

Plaintiff filed a response in opposition to the motion to dismiss.[3] (ECF No. 14). On February 18, 2014, Defendant filed a reply. (ECF No. 16). On July 28, 2014, the Court granted in part and denied in part Defendant's motion to dismiss. (ECF No. 23). Specifically, the Court dismissed Plaintiff's State Law Claims (8)-(17), the policy and custom claim, and all claims against Defendants City of San Diego, City Attorney Jan Goldsmith, and Miriam Milstein. The remaining causes of action include the following civil rights violations pursuant to 42 U.S.C. § 1983: Count 1, violations of First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution (styled as "general allegations")[4]; Count 3, use of excessive force; Count 4 false arrest; Count 5, deprivation of property without due process of law; and Count 6, administration of cruel and unusual punishment. Count 7, violation of Americans with Disabilities Act, also remains.

On August 11, 2014, Defendants Andres Ruiz, Brandon Jordan, and Derek Miller ("Defendants") filed an Answer to Plaintiff's Amended Complaint. (ECF No. 24). On July 24, 2015, Defendants filed the Motion for Judgment on the Pleadings. (ECF No. 41). On August 7, 2015, Plaintiff filed an opposition. (ECF No. 43). On August 21, 2015, Defendants filed a reply. (ECF No. 44).

**II. Allegations of the Third Amended Complaint**

On May 3, 2011, San Diego Police Department responded to a mental health check at Plaintiff's residence. (ECF No. 8 at 4). "When [the] officers arrived, Mr. Redon apologized for wasting their time and thanked the officers for coming to check on him." *Id*. Mr. Redon "explained to them the situation, that everything was fine and that he did not pose a danger to himself or to anyone else . . . ." *Id*. Mr. Redon "politely asked the officers to leave." *Id*. "The officers refused and 5 officers attacked

---

[3] Plaintiff filed his response in opposition to the City Defendants' Motion to Dismiss as a "Motion Opposing Demurrer and Motion for Dismissal." (ECF No. 14). The Court considered Plaintiff's filing to be an opposition brief.

[4] Count I alleges warrantless seizure and excessive force. These claims are duplicative and therefore the Court dismisses Count I with prejudice.

Mr. Redon, wrestling him to the ground, hog tying him." *Id.* "The officers dragged Mr. Redon outside the couples' condo, laid him on the ground, face down in the hallway and began bending his fingers and limbs, kicking, elbowing and punching him[,] practicing pain compliance techniques . . . . [T]his went on for five to seven minutes." *Id.* "Officers then dragged Mr. Redon, hog tied [him] . . . and sat him in a squad car." *Id.* "Mr. Redon was then transported to San Diego County Mental Health facility and was admitted against his will for a 72 hours hold." *Id.* "Officer Natal . . . who had admitted Mr. Redon to the Psychiatric Hospital, called Mrs. Redon and explained to her that in his 25 years of police work he had never seen anyone so manic and that Mr. Redon had been admitted to the County Psychiatric Facility." *Id.* "Mr. Redon was released after the psychiatric hold . . . ." *Id.*

"On August 19th, 2011, Mrs. Redon called 911 stating that Mr. Redon was in possession of the couple's child, was bipolar, and smoked marijuana." *Id.* at 5. "Mrs. Redon claimed Mr. Redon had pushed her and spit on her." *Id.* "During her conversation with the 911 operator . . . Mrs. Redon realizing her mistake, told the operator that everything was fine and that no one need to come to the location to investigate." *Id.* "The 911 operator informed Mrs. Redon that officers were required to come to the scene and investigate all matters related to domestic violence." *Id.* "Close to 30 minutes passed before Officers Ruiz and Jordan arrived . . . ." *Id.* "The Officers knocked on the door when they arrived and Mrs. Redon immediately answered it." *Id.* "Mrs. Redon politely greeted the officer and Mr. Redon told the officers they could come inside and that everything was fine." *Id.* "Officer Jordan entered the apartment and Officer Ruiz asked Mrs. Redon to step outside." *Id.* "Upon entering the apartment, Mr. Redon immediately recognized Officer Jordan from the May 3rd incident and stated to Officer Jordan that he had done nothing wrong." *Id.* "Officer Jordan replied to Mr. Redon that he was not under arrest, cornered Mr. Redon and demanded Mr. Redon place [his] sleeping child . . . unattended, on a three foot high adult bed over hardwood floor." *Id.* "Mr. Redon replied 'No,' and, before he could

explain to Officer Jordan that it would be unsafe to place the child unattended on a bed, Officer Jordan repeated the command." *Id*. "At this time Officer Ruiz and Mrs. Redon walked back inside . . . [and] Mrs. Redon offered to take the sleeping child . . . ." *Id*. "The couple looked to the officers, who nodded in affirmation of this remedy to the situation." *Id*. "As the couple began to exchange the child, without a word of warning or direction, the officers grabbed Mr. Redon's arms, kneed him and then placd him in a carotid choke." *Id*. "Mr. Redon lost consciousness in Officer Jordan's arms from the carotid choke . . . ." *Id*. "Officer Ruiz then pulled out his department issued x-26 taser, squatted next to Mr. Redon and deployed his taser at point blank range into the left side of Mr. Redon's chest over his heart." *Id*. at 6. "Officer Ruiz redeployed the taser in drive stun mode into Mr. Redon's knee." *Id*. "Officer Jordan escorted Mr. Redon to the UCSD Hospital . . . ." *Id.* "The taser probes from Officer Ruiz's taser penetrated all the way down the probe shaft into Mr. Redon's chest down to the nitrogen deployment shells and had to be removed by hospital staff." *Id*. "Mr. Redon was brought to the San Diego County Jail and booked on PC 148(a)(1) [resisting arrest], PC 273.5 [spousal abuse], and PC 273[child endangerment]." *Id*.

"On August 22nd, 2011, Detective Miller contacted Mrs. Redon for a follow up Domestic Violence investigation." *Id*. "Mrs. Redon informed Detective Miller that she had been the primary aggressor and that she was actually more concerned with the officers' use of force than with anything her husband had done." *Id*. "Officer Miller . . . decided he would not question her any further or investigate the claims [Mrs. Redon] made of excessive force and police brutality against Mr. Redon." *Id*.

On August 28, 2011, Plaintiff was "arraigned on one count of PC 148(a)(1) [resisting arrest] and one count of PC 243(e)(1) [domestic battery] . . . ." *Id*. Ultimately, Mr. Redon was charged with "[o]ne [count of] 273.5(a), two PC 148(a)(1), four 243(e)(1) and one count of 273a(b)." *Id.*

Plaintiff's criminal matter proceed to a jury trial and "Mr. Redon was acquitted of all domestic violence and child endangerment charges." *Id*. at 8. "[T]he jury

convicted Mr. Redon of PC 148(a)(1) [resisting arrest] against Officer Jordan." *Id.* "[T]he jury was unable to come to a verdict on the final PC 148(a)(1) [resisting arrest] charge against Officer Ruiz based on questions of excessive force as it pertained to the use of a Taser." *Id.*

"Mr. Redon and Mrs. Redon filed a complaint with the San Diego Police Department around June 28th, 2012." *Id.*

### III. Standard of Review

A motion for judgment on the pleadings is governed by Federal Rule of Civil Procedure 12(c), which states, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgement on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation omitted). "Analysis under Rule 12(c) is substantially identical to analysis under [Federal] Rule [of Civil Procedure] 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.* (quotation omitted). To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). If a court grants judgement on the pleadings, it is a decision on the merits. *See General Conf. Corp. of Seventh-Day*

*Adventists v. Seventh-Day Adventists Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989).

**IV. Discussion**

### A. Request for Judicial Notice

Defendants request that the Court take judicial notice of a court decision issued on July 20, 2015 by the Superior Court of the State of California, County of San Diego, Appellate Division affirming Plaintiff's conviction for resisting or delaying a peace officer in the performance of duties. (ECF No. 41-2 at 1). Defendants also request that the Court take judicial notice of a court order issued on July 28, 2015 by the Superior Court of the State of California, County of San Diego, Appellate Division, denying Plaintiff's Application for Certification to the Court of Appeal. (ECF No. 44-1 at 1). Defendants contend that judicial notice of the documents is proper because the documents relate to Plaintiff's claim of excessive force. Defendants contend this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id*. Plaintiffs contend that Defendants' request for judicial notice should be denied because it is an "attempt[] to convert [Defendants'] Rule 12(c) motion to one for Summary Judgment under Rule 56" and Plaintiff "is not prepared for Summary Judgment . . . ." (ECF No. 43-1 at 7).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12. However, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). "[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id*. at 690 (internal quotation marks omitted). The Court will take judicial notice of the existence of the court opinions; however, the Court will not consider the truth of the facts therein.

### B. Timeliness of 12(c) Motion

Plaintiff contends that Defendants' motion should be denied because the pleadings are not "closed" for the purposes of Rule 12(c) because not all Defendants have provided an answer. (ECF No. 43-1 at 5). Defendants contend that "Defendant Jordan, Miller, and Ruiz have appeared in this action" and those three Defendants have filed an answer. (ECF No. 44 at 1).

A motion for judgment on the pleadings may not be brought until the pleadings are closed. Ordinarily, this means that "where an action names multiple defendants, the pleadings are not closed until all defendants have answered." *See, e.g.*, *Watson v. County of Santa Clara*, 2007 WL 2043852 (N.D. Cal. 2007) (denying the defendants' motion for judgment on the pleadings where all the defendants had been served but not all defendants had answered); *Habeeba's Dance of the Arts, Ltd. V. Knoblauch*, 2006 WL 968642 (S.D. Ohio 2006) (denying the defendant's motion for judgment on the pleadings where the other defendant had filed a motion to dismiss that was pending before the court); *Stands Over Bull v. Bureau of Indian Affairs*, 442 F.Supp. 360, 367 (D.Mont.1977) (denying defendants' motion because they had not filed an answer although other defendants had). However, some courts have found that they have discretion to allow motions for judgment on the pleadings in some circumstances. *See e.g.*, *Moran v. Peralta Cmty. Coll. Dist.*, 825 F.Supp. 891, 894 (N.D. Cal.1993) (allowing defendant's motion where another defendant had yet to be served and thus technically was not yet a party).

In this case, Defendants Jordan, Miller, and Ruiz have filed an answer. (ECF No. 24). There is no indication that any of the other named parties in this case have been served. Accordingly, the pleadings may be treated as closed for purposes of this motion.

**C. Defendant Miller**

Defendant contends that the operative complaint fails to state a cause of action against Defendant Miller and, even if it did, as "the investigating detective in Plaintiff's criminal proceeding" Miller is "protected by prosecutorial immunity." (ECF No. 41-1

at 3-4). Plaintiff contends that Miller is not entitled to "qualified immunity." (ECF No. 43-1 at 5-6).

California Government Code Section 821.6 provides, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

> The provision's principal function is to provide relief from malicious prosecution. But the statute also extends to actions taken in preparation for formal proceedings, including actions incidental to the investigation of crimes. Even so, section 821.6, as it applies to police conduct, is limited to actions taken in the course or as a consequence of an investigation.

*Blankenhorn v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007) (internal citations omitted). Plaintiff's sole allegation is that Miller failed to investigate Mrs. Redon's claims that officers used excessive force against Plaintiff. This alleged misconduct taken as true occurred during the course of Miller's investigation of the domestic violence charges against Plaintiff. Miller is not liable for any injury based upon this allegation under section 821.6.

**D. Statute of Limitations**

Defendants contend that "Counts I, IV, and V allegations of false arrest and taking of property are time barred by the applicable statute of limitations," on grounds that Plaintiff filed his complaint more than a year after the incidents giving rise to Plaintiff's claims. (ECF No. 41-1 at 2). Plaintiff contends that he was arrested on August 19, 2011, "detained overnight until Saturday August 20th, 2011 and was not held before the magistrate until his arraignment on Monday, August 29th." (ECF No. 43-1 at 19). Plaintiff contends that "[a]t minimum the tolling for Plaintiff's false imprisonment claim should not have occurred until August 29th, 2011" and, therefore, his complaint, which was filed on August 22, 2012, was "timely." *Id*. Alternatively, Plaintiff contends that Plaintiff made a "good faith effort to meet a one year statute of limitation filing deadline trying twice to file" and by effecting service by mail on August 18, 2012. *Id*. at 18.

To determine the statute of limitation applicable to a claim pursuant to 42 U.S.C. § 1983, the court applies the statute of limitation in the forum state. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Under California law, Plaintiff's claim of false arrest and seizure of property have a one year statute of limitation period. *See* Cal. Code Civ. Proc. § 340(c) and § 340(d). "The statute of limitations upon a § 1983 claim seeking damages for a false arrest . . . where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397.

In this case, Plaintiff alleges that he was falsely arrested on May 3, 2011 and August 19, 2011. Plaintiff alleges that he was deprived of his property during the May 3 incident. Plaintiff filed the original complaint on August 22, 2012, more than a year after both arrests. The Court concludes that Plaintiff's civil rights claims for false arrest (Count 4) and deprivation of property (Count 5) are barred by the statute of limitations.

**E. Heck (Count 3)**

Defendants contend that *Heck v. Humphrey* bars Plaintiff's § 1983 claim of excessive force because that claim implies the invalidity of Plaintiff's conviction for violating PC section 148(a), a conviction which has not been reversed.[5] In opposition, Plaintiff contends that his claims are not barred by *Heck* because, under *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011), Plaintiff's conviction and his claim of excessive force are based on different actions occurring during one continuous transaction. Specifically, Plaintiff contends he was convicted of "PC 148(a)(1) for refusing to put his newborn daughter on a three foot high adult bed at Officer Jordan's request." (ECF No. 43-1 at 8). Plaintiff contends that the officers then used excessive force by "choking the Plaintiff to unconsciousness and then tasering him

---

[5] Defendants also contend that *Heck* bars Plaintiff's claims for false arrest and deprivation of property. Because the Court concluded that these causes of actions are barred by the statute of limitation, the Court does not address whether they are *Heck* barred.

twice . . . ." *Id.* Plaintiff notes that he was not convicted of resisting arrest against Ruiz.

In *Heck* the Supreme Court held,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486-87. In *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011), the Court of Appeals for the Ninth Circuit held that "a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" *Hooper*, 629 F.3d 1134. In *Hooper*, a deputy grabbed the plaintiff's wrist and told her she was under arrest for possession of a controlled substance. The plaintiff then jerked her hand away. *Id.* During the ensuing struggle, the plaintiff ended up face down on the ground with the officer sitting on her back. *Id.* The plaintiff continued to struggle for a brief time and stopped when the deputy was able to hold the plaintiff's hands behind the plaintiff's back. *Id.* While the deputy was waiting for backup to arrive, he called for his canine to come over, and the canine bit the plaintiff's head causing significant injuries. *Id.* at 1129.

The plaintiff pled guilty to resisting a peace officer under PC 148(a)(1), and brought suit under § 1983 for excessive force. *Id.* In that suit, the plaintiff did not

dispute the lawfulness of her arrest, or that she resisted arrest. *Id.* Rather, the plaintiff claimed the deputy used excessive force when he called upon his dog. The Court of Appeals held that the plaintiff's excessive force claim was not barred under *Heck*. The Court of Appeals concluded that "[a] holding in [the plaintiff's] § 1983 case that the use of the dog was excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of [the plaintiff's] attempt to resist it" by jerking her hand away from the deputy. *Id.* at 1133 (internal quotation marks omitted). *See also Yount v. City of Sacramento*, 183 P.3d 471, 482 (Cal. 2008) ("[A] defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him. The subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it. Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer.")

     In this case, as in *Hooper*, Plaintiff argues that the officers used excessive force *after* the conduct giving rise to Plaintiff's PC 148(a)(1) conviction was completed. Viewing the evidence in the light most favorable to Plaintiff, the encounter, although occurring in one continuous claim of events, may have involved two "factual contexts." *See Yount* 183 P.3d at 482. The first—when Plaintiff refused to place his child on the bed at Jordan's request—gave rise to the criminal liability on the part of Plaintiff. The second—when Ruiz entered the room and the officers placed Plaintiff in a carotid choke and tasered Plaintiff—gave rise to civil liability on the part of the arresting officers. Under that scenario, it is reasonable to infer that Plaintiff's section PC 148(a)(1) conviction relative to Defendant Jordan was related to Plaintiff's refusal to place his child on the bed and that a finding that the officers subsequently used excessive force against Plaintiff would not imply the invalidity of the conviction. The Court concludes that Plaintiff's conviction under PC 148(a)(1) does not bar a § 1983 claim for excessive

force under *Heck*.

**F. 8th Amendment Violation Claim (Count 6)**

Defendant contends that "Plaintiff fails to allege facts necessary to establish a claim based on an 8th Amendment violation." (ECF No. 41-1 at 2). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The "cruel and unusual punishment" clause serves to "limit[] the kinds of punishment that can be imposed on those convicted of crimes" and "proscribe[] punishment grossly disproportionate to the severity of the crime. *Ingraham v. Wright*, 430 U.S. 651, 667 (1977). The Eighth Amendment was "designed to protect those convicted of crimes." *Id.* at 664. "Pretrial detainess are not convicted prisoners" and therefore "are accorded no rights under the Eighth Amendment." *Lee*, 250 F.3d at 686.

In this case, Count 6 alleges that Ruiz violated Plaintiff's "right to be free from cruel and unusual punishment, when he tasered [Plaintiff], after [Plaintiff] had already been 'arrested' and 'detained' in an unconscious state." (ECF No. 8 at 14). At the time of the alleged violation Plaintiff had not been convicted of any crime. Accordingly, the Court concludes that Plaintiff has failed to state a claim that his Eighth Amendment rights were violated.

**G. Americans with Disabilities Act (Count 7)**

Defendant contends that Plaintiff's third amended complaint fails to state a claim for an ADA violation because Plaintiff "brings his ADA claim pursuant to Title III of the ADA" which only applies to private entities. (ECF No. 41-1 at 7).

Title III of the Americans with Disabilities Act (ADA) prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Title III covers only private entities. 42 U.S.C. § 12181(6).

Count 7 of Plaintiff's complaint cites "42 U.S.C. § 12181," title III of the ADA. However, Plaintiff's complaint also cites the "Americans with Disabilities Act, Pub. L. 101-336[6]" and "Subtitle A." There is only one Subtitle A in the ADA and it is part of Title II, which covers Public Services. Specifically, subtitle A covers the "Prohibition Against Discrimination and Other Generally Applicable Provisions" as related to "Public Services." The Court liberally construes Plaintiff's complaint as making a claim under Title II. *See e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same).

Defendant contends that Plaintiff "fails to allege facts demonstrating his disability or that he is a qualified individual." (ECF No. 41-1 at 8). Defendant also contends that Plaintiff "fails to identify the particular discrimination." *Id*. Plaintiff contends that he does not have a disability, but that Defendants "regarded" Plaintiff as having a disability. (ECF No. 43-1 at 13). Plaintiff contends that Defendants' "characterization that Plaintiff's medications for his disability were illegal narcotics was used to justify their intrusion into Plaintiff's constitutionally protected rights, remove his dog and child, and to justify their use of force on May 3rd, 2011" and to arrest him on August 19.[7] *Id*. at 14-15.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

---

[6] Public Laws 101-336 refer to the entire Americans with Disabilities Act of 1990, including Title II and Title III.

[7] In his response, Plaintiff also contends that "Officers used the opportunity to arrest Plaintiff on August 19th, 2011 as a way to retaliate and potentially silence the Plaintiff from filing a suit or complaint for the Officers' actions on May 3rd, 2011." (ECF No. 43-1 at 15). Plaintiff's complaint does not raise any allegations of retaliation and therefore the Court does not address that argument.

discrimination by any such entity." 42 U.S.C. § 12132. Title II applies to law enforcement agencies and arrests. *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir.) cert. granted sub nom. *City & Cty. of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 702, 190 L. Ed. 2d 434 (2014) and rev'd in part, cert. dismissed in part sub nom. *City & Cty. of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015)  To make out a prima facie case under Title II of the ADA a plaintiff must allege that

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (citing *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002) (per curiam), cert. denied, 538 U.S. 921 (2003)). "[A] Plaintiff proceeding under Title II of the ADA must . . . prove that the exclusion from participation in the program was 'solely by reason of disability.'" *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996). The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment

42 U.S.C. § 12102(1). A person meets the requirement of "being regarded as having such an impairment" if that person "establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

In this case, Plaintiff's complaint contains facts regarding his mental health. For example, Plaintiff alleges that he was "transported to San Diego County Mental Health

facility and was admitted against his will for a 72 hour hold." (ECF No. 8 at 4). Plaintiff also alleges that the officer who admitted Plaintiff to the "Psychiatric Hospital, called Mrs. Redon and explained to her that in his 25 years of police work her had never seen anyone so manic . . . ." *Id*. Plaintiff alleges that on August 19, 2011, Mrs. Redon told the 911 operator that Plaintiff was "bipolar." *Id*. Plaintiff alleges that Officer Jordan responded to both the May 3 and August 19 incidents and therefore perceived Plaintiff as having a mental disability. *Id*. at 8. Plaintiff's allegations are sufficient to allege that he has a disability or was regarded as having such an impairment.

However, Plaintiff has failed to allege facts to infer that he was discriminated against "solely by reason of disability." During the May 3, 2011 incident, Plaintiff was transported to a mental health and welfare facility pursuant to section 5150 of the California Welfare and Institutions Code because officers determined that "as a result of a mental health disorder, [Plaintiff] is a danger to others, or to himself . . . ." *See* Cal. Welf. & Inst. Code § 5150. Plaintiff's complaint does not allege that officers took Plaintiff to the mental health and welfare facility solely because of Plaintiff's disability or perceived disability. Similarly, there is no evidence that on August 19, 2011, officers arrested Plaintiff because of his real or perceived disability. Rather, officers arrested Plaintiff after responding to a 911 call reporting a domestic disturbance. Even if Mrs. Redon told the 911 operator that Plaintiff was "bipolar," there are no facts alleged that could support the inference that the officers arrested Plaintiff solely because of his actual or perceived disability.

**V. Conclusion**

IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (ECF No. 41) is granted in part and denied in part. The motion is granted as follows: Count 1; Count 4, false arrest; Count 5, deprivation of property without due process of law; Count 6, administration of cruel and unusual punishment; Count 7, violation of Americans with Disabilities Act; and all claims against Derek Miller are

dismissed with prejudice; the Motion is otherwise denied as to Count 3, use of excessive force as to Defendants Brandon Jordan and Andres Ruiz.

DATED: December 17, 2015

**WILLIAM Q. HAYES**
United States District Judge