FILED

17 OCT 11 PM 4:38

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ZMC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON A. REDON,<br><br>               Plaintiff,<br>v.<br>ANDRES RUIZ, et al.,<br><br>               Defendants. | Case No.: 13cv1765-WQH(KSC)<br><br>**REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION FOR TERMINATING SANCTIONS**<br><br>[Doc. No. 95.] |

Plaintiff is proceeding *pro se* in this civil rights action pursuant to Title 42, United State Code, Section 1983, alleging violations of his rights under the United States Constitution.[1] On July 25, 2016, defendants Andres Ruiz and Brandon Jones filed a Motion for Terminating Sanctions seeking dismissal of the action based on plaintiff's repeated refusal to comply with Court Orders requiring him to disclose relevant medical and mental health records pursuant to Federal Rule of Civil Procedure 26(b)(1). [Doc.

---

[1] District Courts are obligated to afford a certain amount of leeway to *pro se* litigants and to construe their pleadings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

1

No. 95, at pp. 1-10.] On February 14, 2017, this Court issued an Order Deferring Report and Recommendation on defendants' Motion for Terminating Sanctions and Allowing Time for Supplemental Briefing. [Doc. No. 103.] Currently before the Court for a report and recommendation to the District Court are the following submissions by the parties:

1. Defendants' Motion for Terminating Sanctions [Doc. No. 95];
2. Plaintiff's Response to defendants' Motion [Doc. No. 99];
3. Defendants' Reply [Doc. No. 100];
4. Defendants' Supplemental Briefing [Doc. No. 110];
5. Plaintiff's Supplemental Briefing [Doc. No. 112]; and
6. Defendant's Notice of Completion of Fact Discovery [Doc. No. 116].

On March 28, 2017, while the Motion for Terminating Sanctions was pending, the District Court issued an Order granting summary judgment in favor of defendant Jordan but denying summary judgment as to defendant Ruiz. [Doc. No. 111, at p. 18.] Accordingly, the Motion for Terminating Sanctions is now before the Court as to defendant Ruiz only. Based on a review of all of the facts and circumstances as presented in the parties' submissions, IT IS RECOMMENDED that the Court DENY defendant's Motion for Terminating Sanctions. [Doc. No. 95.]

## *Background*

The original Complaint in this action was filed in state court on or about August 22, 2012 and removed to this Court on July 29, 2013, so the case has been pending for more than four years. [Doc. No. 1; Doc. No. 1-2, at pp. 1, 10.] An Amended Complaint was filed in this Court on December 23, 2013 ("the operative Complaint"). [Doc. No. 8.] However, as a result of pre-trial rulings by the District Court, the only remaining claim in the action is for excessive force against defendant Ruiz. [Doc. No. 23, at p. 8; Doc. No. 53, at pp. 16-17; Doc. No. 85, at pp. 3, 6; Doc. No. 111, at p. 18.]

Plaintiff's factual allegations relate to two separate incidents on May 3, 2011 and August 19, 2011. In both of these incidents, plaintiff claims police officers acted improperly and subjected him to unnecessary and excessive force.

*May 3, 2011 Incident*: The operative Complaint states that plaintiff dialed 9-1-1 on May 3, 2011 and asked for assistance in finding his wife and four-month old daughter, because his wife ran out of their home with the child but without any food, clothing, or diapers. An officer arrived but told plaintiff there was nothing he could do to help. [Doc. No. 8, at p. 3.] Later the same day, plaintiffs wife returned with the child and began packing to leave, but plaintiff refused to let her take the child again. As a result, plaintiff's wife dialed 9-1-1 and said plaintiff had taken the child. [Doc. No. 8, at p. 3.] Before officers arrived, plaintiff gave the child to his wife. When officers arrived, plaintiff alleges they forced him outside of the home and allowed his wife to gather her belongings. The officers then escorted plaintiff's wife, child, and dog out of the home. [Doc. No. 8, at p. 4.]

Next, plaintiff claims that he vented his frustration over the situation by making statements on Facebook. These statements caused relatives and friends to be concerned enough to dial 9-1-1 and ask for mental health officials to check on plaintiff. When the officers arrived, plaintiff allegedly told them he was fine; apologized for wasting their time; thanked them for checking on him; and asked them to leave. [Doc. No. 8, at p. 4.] Instead, plaintiff alleges that officers attacked him; wrestled him to the ground; hog tied him; laid him face down in the hallway; and began applying "pain compliance techniques." [Doc. No. 8, at p. 4.] According to the operative Complaint, officers bent plaintiff's fingers and limbs and kicked, elbowed, and punched him for five to seven minutes. Officers then dragged plaintiff out to the street and sat him in a squad car. [Doc. No. 8, at p. 4.]

While in the squad car, plaintiff alleges he overheard officers talking about falsifying reports to say plaintiff was armed with a knife when officers arrived. [Doc. No. 8, at p. 4.] Plaintiff was then transported to a San Diego County Mental Health facility, where he claims he was admitted and held against his will for 72 hours. [Doc. No. 8, at p. 4.] After being released from the 72-hour hold, plaintiff returned to live with his wife. [Doc. No. 8, at p. 4.]

*August 19, 2011 Incident*: On August 19, 2011, plaintiff's wife called 9-1-1 reporting that plaintiff had their child, was bi-polar, and smoked marijuana. She also claimed plaintiff had pushed her and spit on her. However, during the course of the conversation with the 9-1-1 operator, plaintiff's wife realized she made a mistake, said everything was fine, and told the operator it was not necessary for anyone to come out to investigate. However, the operator informed plaintiff's wife that officers were required to investigate all reports of domestic violence. [Doc. No. 8, at p. 5.]

About 30 minutes after the 9-1-1 call, Officer Ruiz and Officer Jordan arrived but everything was calm by this time, and the couple's child was asleep on plaintiff's shoulder. [Doc. No. 8, at p. 5.] Plaintiff's wife told the officers they could come inside but everything was fine. Plaintiff recognized Officer Jordan from the prior incident on May 3, 2011. Plaintiff was asked to step outside, and Officer Jordan directed plaintiff to put the child down on an adult bed. Believing it would be unsafe to place a child unattended on a bed, plaintiff said, "No." [Doc. No. 8, at p. 5.] After Officer Jordan repeated his request, plaintiff's wife offered to take the child. [Doc. No. 8, at p. 5.]

When the couple began to exchange the child, the Complaint alleges that officers "without a word of warning" grabbed plaintiff, kneed him, and placed him in a "carotid choke." [Doc. No.8, at p. 5.] Plaintiff allegedly lost consciousness and was lowered to the ground. Officer Ruiz then allegedly pulled out his Taser gun and "deployed" it at "point blank range" into the left side of plaintiff's chest and then into his knee. [Doc. No. 8, at p. 6.] Once he regained consciousness, plaintiff was arrested and taken to the hospital. [Doc. No. 8, at p. 6.]

As a result of these incidents, plaintiff claims he "suffered serious personal injuries and loss of companionship of his wife and child for a period of 4 months." [Doc. No.8, at p. 12.] He also claims that he suffers from fear, anxiety, and "severe emotional distress." [Doc. No.8, at pp. 9, 13-15.] In the prayer for relief, plaintiff seeks general, compensatory, and punitive damages. [Doc. No.8, at pp. 19-20.] Plaintiff also seeks injunctive relief in the form of an order requiring the San Diego Police Department to

refrain from using Taser guns and to rewrite their use of force matrix to comply with the Constitution. In addition, plaintiff seeks an order requiring defendant to seal and destroy all documents and records referring to him or his arrest between May 3, 201[1] and January 20, 2013. [Doc. No. 8, at pp. 20.]

### *Background Leading to the Motion for Terminating Sanctions*

On March 5, 2015, this Court entered a Scheduling Order setting a deadline of July 31, 2015 for the completion of all fact discovery. [Doc. No. 31, at p. 1.] On May 26, 2015, at the request of the parties, the Court entered a *stipulated* Protective Order governing the exchange of confidential information between the parties. [Doc. No. 33.] The Protective Order allows the parties to designate documents and information, such as private medical records and other medical information produced during discovery as "confidential information." [Doc. No. 33, at pp. 3-4.] Among other safeguards, the Protective Order includes the following provision: "A Receiving Party may use Confidential Information only to prosecute, defend, or settle this litigation." [Doc. 33, at p. 6.] In addition, the Protective Order provides as follows: "Unless the Court orders otherwise, within twenty-one (21) days after the conclusion of this litigation, any party receiving 'confidential material' shall destroy said material or return it to the producing party." [Doc. No. 33, at p. 8.]

On June 15, 2015, defendant filed an Ex Parte Application for an Order Compelling Written Discovery Responses and Release of Medical Records.[2] [Doc. No. 34.] In their moving papers, defendants represented they served plaintiff with interrogatories and requests for production of documents on April 13, 2015 and responses were due no later than May 18, 2015. [Doc. No. 34-2, at pp. 1-2.] Despite meet and

---

[2] Defendants' Ex Parte Application also requested an order compelling an Independent Medical Examination of plaintiff. [Doc. No. 34, at p. 1.] However, this issue was addressed separately and is not relevant to defendants' Motion for Terminating Sanctions. [Doc. Nos. 42; 51; 61, at pp. 1-2; 70; 86.]

5

confer efforts, repeated requests, and the entry of the above-described Protective Order, plaintiff did not respond to defendants' discovery requests and told defendants he would not be participating in discovery and would never sign a release for his mental health records from any treating physician or facility. [Doc. Nos. 34-2, at pp. 2; 34-2, at pp. 2-5; Doc. No. 49, at p. 5.]

Plaintiff filed a lengthy Opposition [Doc. No. 36], but this Court issued an Order Granting Defendants' Ex Parte Application for an Order Compelling Plaintiff to Provide Written Responses to Discovery and a Release of Medical Records (the "December 4, 2015 Order"). [Doc. No. 49.] As to some of defendants' discovery requests, the Court concluded they were overly broad as to time and ordered plaintiff to provide limited responses. [Doc. No. 49, at pp. 17-21.] No later than December 18, 2015, plaintiff was ordered to serve defendants with his responses to written discovery and to provide defendants with a completed form authorizing them to inspect and copy relevant medical and mental health records. [Doc. No. 49, at p. 21.] To protect plaintiff's privacy, any medical or mental health records were to be produced subject to the Protective Order filed on May 26, 2015. [Doc. No. 49, at p. 21, citing Doc. No. 33.] Plaintiff was forewarned that sanctions, including dismissal of the entire action, could be imposed if he failed to comply with the Court's Order.[3] [Doc. No. 49, at p. 21.]

On December 21, 2015, plaintiff filed Objections to this Court's December 4, 2015 Order Granting Defendants' Ex Parte Application for an Order Compelling Plaintiff to Provide Written Responses to Discovery and a Release of Medical Records. [Doc. No. 56.] On June 7, 2016, the District Court overruled plaintiff's objections to this Court's December 4, 2015 Order. [Doc. No. 82, 49.] Thereafter, on June 22, 2016, this Court granted the parties' joint request to amend the Scheduling Order and extended the discovery deadline to December 2, 2016. [Doc. No. 87, at p. 2.] In addition, this Court

---

[3] On January 5, 2016, defendants filed a Status Report advising the Court that plaintiff did not comply with the December 4, 2015 Order. [Doc. No. 61.]

6

issued an Order allowing plaintiff additional time until July 8, 2016 to comply with the December 4, 2015 Order by providing responses to defendants' written discovery requests and a completed form authorizing defendants to inspect and copy relevant medical and mental health records. [Doc. No. 88, at p. 2.] Once again, the Court forewarned plaintiff that sanctions could be imposed, including dismissal of the entire action, if he failed to comply with this Court's Order. [Doc. No. 88, at p. 3.]

On July 8, 2016, this Court held a telephonic Case Management Conference with plaintiff and defense counsel. [Doc. No. 94.] During the Case Management Conference, plaintiff stated that he would not comply with this Court's December 4, 2015 Order to provide a completed, signed, and dated authorization form to allow defendants to inspect and copy his medical and mental health records. [Doc. No. 96, at p. 1.] The Court again forewarned plaintiff that the entire action could be dismissed if he failed to provide defendants with the completed authorization forms as ordered. [Doc. No. 95-1, at p. 2.] The Motion for Terminating Sanctions was filed shortly thereafter on July 25, 2016. [Doc. No. 95.]

## *Discussion*

### *I. The Motion for Terminating Sanctions (Rules 16, 37, and 41).*

In the Motion for Terminating Sanctions, defendants argue that the entire action should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 16, 37, and 41, because plaintiff failed, after repeated warnings, to comply with the Court's Order to allow discovery of relevant medical and mental health records. [Doc. No. 95, at pp. 1-20.] Defendants also argue that dismissal of the entire action is justified, because plaintiff unreasonably delayed the case and prejudiced their ability to prepare a defense when he repeatedly refused to comply with the Court's Order to permit discovery of relevant medical and mental health records. [Doc. No. 103, at p. 13.]

In his Opposition to the Motion for Terminating Sanctions, plaintiff continued to vigorously object to and resist production of his medical and mental health records on various grounds, including relevance, privacy, and the Fifth Amendment privilege against

7

self-incrimination. [Doc. No. 99, at pp. 1-22.] The Court addressed and rejected all of these arguments in the February 14, 2017 Order Deferring Report and Recommendation on Defendants' Motion for Terminating Sanctions. [Doc. No. 103, at pp. 7-12.] [4]

Based on the facts and circumstances presented in the Motion for Terminating Sanctions, plaintiff's Opposition thereto, and defendants' Reply, this Court determined that more information was needed on the issues of prejudice and the availability of lesser sanctions before this Court could make a recommendation to the District Court. As a result, this Court issued the February 14, 2017 Order Deferring Report and Recommendation on Defendants' Motion for Terminating Sanctions and requested supplemental briefing from the parties. [Doc. No. 103, pp. 13-22.] In addition, the Court suggested, based on California Civil Code Section 56.10(b)(1), that defendants submit a proposed Order to the extent they believed it would assist them in obtaining access to relevant medical and/or mental health records.[5] [Doc. No. 103, at p. 21.] Thereafter, defendants submitted a proposed Order. On March 24, 2017, the Court entered an Order for Release of Plaintiff's Medical and Mental Health Records from San Diego County Mental Health and Kaiser Permanente. [Doc. No. 109.]

Next, on March 27, 2017, defendants submitted Supplemental Briefing on their Motion for Terminating Sanctions. [Doc. No. 110.] On March 28, 2017, while the Motion for Terminating Sanctions was pending, the District Court issued an Order granting summary judgment in favor of defendant Jordan but denying summary judgment as to defendant Ruiz. [Doc. No. 111, at p. 18.] Therefore, as of the District Court's

---

[4] A discussion of these arguments will not be repeated here, as they are not relevant to whether terminating sanctions are justified on the current record.

[5] California Civil Code Section 56.10(a) states in part as follows: "A provider of health care . . . shall not disclose medical information regarding a patient of the provider . . . without first obtaining an authorization. . . ." Cal. Civ. Code § 56.10(a). However, an exception applies if the disclosure of medical information is compelled by a court order. Cal. Civ. Code 56.10(b)(1).

8

1  Order of March 28, 2017, defendant Ruiz is the only remaining moving party on the
2  pending Motion for Terminating Sanctions.
3        On April 11, 2017, plaintiff filed Supplemental Briefing indicating he had decided
4  to allow release of his records pursuant to the Court's Order of March 24, 2017. [Doc.
5  No. 112.] Then, on July 12, 2017, defendant Ruiz filed a Notice of Completion of Fact
6  Discovery reporting receipt of plaintiff's medical and mental health records pursuant to
7  the Court's March 24, 2017 Order. The Notice further states that an independent medical
8  examination of plaintiff took place on June 28, 2017. [Doc. No. 116, at p. 1.]

### A. *Standards for Imposing Terminating Sanctions.*

Federal Rule 37(b)(2)(A) provides in part as follows: "If a party . . . fails to obey an order to provide or permit discovery . . . , the court where the action is pending may issue further just orders [that] may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; . . . (v) dismissing the action or proceeding in whole or in part; . . . ." Fed.R.Civ.P. 37(b)(2)(A). Federal Rule 41(b) states as follows: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. . . ." Fed.R.Civ.P. 41(b). Federal Rule 16(f)(1)(C) also provides that the Court may impose terminating and other sanctions if a party "fails to obey a scheduling or other pretrial order." Fed.R.Civ.P. 16(f)(1)(C).

### B. *Relevant Factors.*

The standards for dismissal under the above-referenced rules are "basically the same." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987). "A district court must weigh five factors . . . : (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* at 130 (internal quotations and citations

omitted). *See also In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006). "These factors are 'not a series of conditions precedent before the judge can do anything,' but a 'way for a district judge to think about what to do.'" *Id.* quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

Terminating sanctions are "very severe" and should only be imposed under "extreme circumstances" involving willfulness, bad faith, and fault. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Draft v. Baker*, 24 F.3d at 1167. In addition, a Rule 41(b) dismissal "must be supported by a showing of unreasonable delay.'" *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010), quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986).

### *1. Expeditious Resolution/Docket Management.*

The public's interest in expeditious resolution of litigation and the Court's need to manage its docket are "usually reviewed" together. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1227. Pursuant to Federal Rule of Civil Procedure 1, the public has an interest in securing "the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. "[D]elay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1227. If a court order has been violated, these two factors support terminating sanctions, but these factors must be balanced against the fourth factor (*i.e.*, the public policy favoring a disposition on the merits). *Valley Eng'rs v. Elec. Eng'g Co.*, 158 F.3d at 1057.

Here, the case was filed in state court on August 22, 2012 and was removed to this Court on July 29, 2013. [Doc. No. 1, Doc. No. 1-2, at p. 1.] It has therefore been pending for more than four years. Progress has been significantly delayed because of various discovery disputes and plaintiff's decision not to comply with the Court's

December 4, 2015 Order to make relevant medical and mental health records available to defendants. [Doc. No. 49.] After the Court's December 4, 2015 Order was filed and served, plaintiff refused to make these key records available to defendants for more than a year and not until three more Court Orders on this subject were issued. [Doc. No. 82 (the District Court's Order overruling plaintiff's Objections to the December 4, 2015 Order); Doc. No. 103 (Order Deferring Report and Recommendation); and Doc. No. 109 (Order for Release of Plaintiff's Medical and Mental Health Records).] In addition, after the District Court overruled plaintiff's Objections to the December 4, 2015 Order [Doc. No. 82], the case was stalled for about nine months until this Court issued the March 24, 2017 Order for Release of Plaintiff's Medical and Mental Health Records [Doc. No. 109]. Defendants finally obtained access to the relevant records sometime between March 24, 2017 and July 12, 2017. [Doc. No. 116.] Since plaintiff was in violation of more than one Court Order for an extended period of time, the first two factors weigh in favor of the dismissal sought in the Motion for Terminating Sanctions.

### 2. *Policy Favoring Disposition of Cases on the Merits.*

Typically, the policy favoring disposition of cases on the merits weighs against dismissal. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1228. "Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). While *pro se* litigants have a duty to comply with the applicable rules of civil procedure and court orders (*Jacobsen v. Filler*, 790 F.2d 1362, 1364–65 (9th Cir.1986)), the policy favoring resolution on the merits "is particularly important in civil rights cases." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998). *See, e.g., Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996) (indicating that the public has an interest in deciding excessive force cases on the merits).

"At the same time, a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits. Thus, [the Ninth Circuit has] also recognized that this factor

11

13cv1765-WQH(KSC)

'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1228. In other words, this factor "is not compelling when it is thwarted by the plaintiff['s] failure to move [the] case[] along." *Id.* at 1240.

As outlined in the preceding section, the case was stalled and significantly delayed because of plaintiff's refusal to comply with Court Orders requiring him to make relevant medical and mental health records available to defendants. The Court acknowledges that some of plaintiff's long continuing reluctance and refusal to produce relevant medical and mental health records can be attributed to his *pro se* status and lack of legal training. Plaintiff also argues that the delay was not "in bad faith," because he was attempting to protect his privacy and other perceived rights. [Doc. No. 112, at pp. 1-2.] Regardless, the policy favoring the disposition of cases on the merits does not weigh heavily in plaintiff's favor.

### 3. *Less Drastic Sanctions.*

Generally, a District Court must consider the feasibility of less drastic sanctions when terminating sanctions are requested. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). It is not necessary for the Court to examine "every single alterative remedy." *Anderson v. Air W., Inc.*, 542 F.2d at 525. "The reasonable exploration of possible and meaningful alternatives is all that is required." *Id.* When less drastic sanctions have already been imposed and/or the court has previously warned the plaintiff of the possibility of a dismissal but these measures have had little or no effect, the "consideration of alternatives" requirement has been satisfied. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1229

"[S]omething other than case-dispositive sanctions will often suffice." *Valley Engineers v. Electric Engineering Co.*, 158 F.3d at 1057. For example, in *Raygoza v. City of Fresno*, 297 F.R.D. 602 (E.D. Cal. 2014), the defendants filed a motion seeking terminating, evidentiary, and monetary sanctions under Rule 37(b) against the plaintiffs,

12

because they failed to timely respond to discovery requests and then failed to appear for their depositions. *Id.* at 604-605. Although acknowledging that the plaintiffs "caused measurable delay in the progress of [the] case and []frustrated defendants' preparation of their defense," the District Court concluded that issue preclusion sanctions, which "could effectively dispose of plaintiff's case," would not be appropriate under the circumstances. *Id.* at 607. The District Court reasoned that the prejudice caused by plaintiffs' "dilatory conduct" could be remedied by allowing defendants more time to complete discovery and by requiring plaintiffs to reimburse the defense for the cost of bringing their motion. Since the delay was not "so significant as to entirely frustrate the public's interest in expeditious resolution of cases or the Court's management of its docket" and "less drastic measures" were available to "avoid real prejudice" to the defendants, the relevant factors did not weigh heavily in favor of more drastic sanctions. *Id.*

The Supplemental Briefing submitted by defendants in support of the Motion for Terminating Sanctions argues convincingly that access to plaintiff's mental health records is particularly necessary for a fair resolution of the case. First, plaintiff seeks and is unwilling to dismiss his psychological damages claims. [Doc. No. 110, at p. 4-5.] Second, there is evidence indicating that plaintiff's mental health records, including details about the medications he was taking at the time in question, will be helpful in explaining plaintiff's behavior, the officers' perceptions of that behavior, and the reasonableness of the officers' actions. [Doc. No. 110, at p. 4-5.] Therefore, it is this Court's view that defendant Ruiz would have been severely prejudiced if the relevant medical and mental health records had not been produced, and less drastic sanctions, such as issue or evidence preclusion, would not have eliminated any prejudice to the defense.

On the other hand, the record does show that measures less drastic than dismissal did result in the eventual release of relevant medical and mental health records, albeit late in the proceedings. As set forth in more detail in preceding sections, defendants filed the Motion for Terminating Sanctions after plaintiff continued to refuse to authorize access to relevant medical and mental health records even though he was twice ordered to do so.

13

Rather than immediately recommending dismissal in response to the Motion for Terminating Sanctions, this Court issued the Order Deferring Report and Recommendation on this Motion. [Doc. No. 103.] In this Order, the Court: (1) addressed various arguments by plaintiff as to why he believed he should not be required to disclose his private records; (2) requested supplemental briefing from the parties on certain issues; (3) indicated to defendants that the Court was willing to issue an order for release of the records without plaintiff's authorization as permitted under California law; and (4) warned plaintiff once again that the case could be dismissed if he continued to impede or frustrate defendants' efforts to obtain the records. [Doc. No. 103, at pp. 7-12; 17-18; 20-22.] Defendants then submitted a proposed Order.

On March 24, 2017, the Court signed an Order for Release of Plaintiff's Medical and Mental Health Records. [Doc. No. 109.] Thereafter, on April 11, 2017, plaintiff stated in his Supplemental Briefing that he had "decided" to allow the release of his records to defendants. [Doc. No. 112, at p. 1.] Then, on July 12, 2017, defendant Ruiz filed a Notice of Completion of Discovery indicating he had finally received plaintiff's medical and mental health records. [Doc. No. 116.] Accordingly, the feasibility of less drastic sanctions is no longer an issue that is important to resolving the pending Motion for Terminating Sanctions, as defendant Ruiz ultimately received the medical and mental health records at issue.

### 4. *Prejudice to Defendant.*

"A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d at 1412. "Prejudice itself usually takes two forms-loss of evidence and loss of memory by a witness. In every case of delay, a district court in the exercise of its discretion should consider whether such losses have occurred and if so, whether they are significant." *Nealey v. Transportacion Maritima Mexicana, S. A.*, 662 F.2d 1275, 1281 (9th Cir. 1980). "[D]elay alone should not be deemed to create a 'presumption of prejudice.'" *Id.* at 1280. On the other hand, "[t]he law

presumes injury from unreasonable delay. [Citation omitted.] However, this presumption of prejudice is a rebuttable one and if there is a showing that no actual prejudice occurred, that factor should be considered" to determine whether a dismissal is appropriate under Rule 41(b) for failure to prosecute. *Anderson v. Air W., Inc.*, 542 F.2d 522, 524 (9th Cir. 1976).

Failing to produce documents as ordered or producing documents at the last minute can also be considered sufficient prejudice to justify a dismissal. *In Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002), for example, the defendant misrepresented that documents did not exist and violated court orders to produce documents despite multiple warnings, but then argued terminating sanctions were not appropriate, because "he eventually produced the documents." *Id.* at 906. However, the Ninth Circuit concluded terminating sanctions were justified, because the defendant's "[l]ast-minute tender of documents" did not "cure the prejudice." *Id.* According to the Ninth Circuit, the record showed the plaintiff was deprived of "any meaningful opportunity to follow up on the time-sensitive information or to incorporate it into litigation strategy." *Id.*

Here, the record shows a significant delay by plaintiff in providing access to key medical and mental health records in response to Court Orders but no actual prejudice to the remaining defendant. On July 12, 2017, defendant Ruiz filed a Notice of Completion of Fact Discovery. [Doc. No. 116.] The Notice states that defendant received plaintiff's medical and mental health records pursuant to the Court's Order of March 24, 2017. [Doc. No. 116, at p. 1, citing Doc. No. 109.] In addition, the Notice states that defendant was able to complete an independent medical examination of plaintiff. [Doc. No. 116.] On August 11, 2017, the Court held a telephonic Case Management Conference and was advised by the parties that they were in the process of preparing for trial and only needed a brief extension of the deadlines leading up to the final Pre-Trial Conference. [Doc. No. 125.] Those dates were briefly extended [Doc. No. 125, at pp. 1-2], and the District Court set a jury trial for November 14, 2017. [Doc. No. 132.] Defendant submitted no

evidence of actual prejudice. Under these circumstances, terminating sanctions are not warranted under Federal Rules of Civil Procedure 37(b)(2)(A), 41(b), or 16(f)(1)(C).

### *Conclusion*

Based on the foregoing, it is RECOMMENDED that the District Court DENY defendant's Motion for Terminating Sanctions. [Doc. No. 95.]

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d). Within fourteen (14) days after being served with a copy of this Report and Recommendation, "any party may serve and file written objections." 28 U.S.C. § 636(b)(1)(B)&(C). The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within this specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir.1991).

Dated: October 11, 2017

Hon. Karen S. Crawford
United States Magistrate Judge